EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
SHAWN J. NELSON (Cal. Bar No. 185149)
BENJAMIN D. LICHTMAN (Cal. Bar No. 241135)
Assistant United States Attorneys
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-5339
     Facsimile:  (213) 894-0141
     E-mail:   shawn.nelson@usdoj.gov
     E-mail:   benjamin.lichtman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | SA CR No. 14-00167-JVS |
|---|---|
| Plaintiff, | GOVERNMENT'S SUPPLEMENTAL BRIEF RE: DEFENDANT'S MOTION FOR DISCOVERY |
| v. | |
| JOSEPH ROH, | |
| Defendant. | |

     Plaintiff United States of America, by and through its counsel
of record, the United States Attorney for the Central District of
California and Assistant United States Attorneys Benjamin Lichtman
and Shawn Nelson, hereby files its Supplemental Brief Regarding
Defendant's Motion for Discovery (CR 70), as directed by the Court in
its February 7, 2017 Order.  (CR 73.)

This Supplemental Brief is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 14, 2017       EILEEN M. DECKER
                               United States Attorney

                               LAWRENCE S. MIDDLETON
                               Assistant United States Attorney
                               Chief, Criminal Division

                                         /s/
                               _____
                               SHAWN J. NELSON
                               BENJAMIN D. LICHTMAN
                               Assistant United States Attorneys

                               Attorneys for Plaintiff
                               UNITED STATES OF AMERICA

2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Following the hearing on defendant Joseph Roh's motion to compel discovery (the "Motion"), the Court directed the government to file a supplemental brief addressing whether certain disclosures by the case agent amount to waivers of the attorney-client privilege, and the effect of any such waiver.  (CR 73.)

The analysis of the waiver issue does not change the fundamental point made in the government's Opposition to the Motion: the documents and information requested by the defense are not material or otherwise discoverable, and defendant has not articulated any viable theory for their discovery under Rule 16, Brady v. Maryland, or the Jencks Act.  Whether there was any privilege waiver does not change that analysis.

In any case, there was no waiver of the attorney-client privilege, because the statements did not disclose confidential communications, and because the case agent lacked authority to waive the agency's privilege.  Even assuming the Court finds a waiver, under Federal Rule of Evidence 502(a), the effect should be limited to a waiver of the disclosed communications.  Although the disclosures were voluntary, no privilege waiver was intended. Moreover, fairness does not require or permit a subject-matter waiver where, as here, the disclosed statements were not and will not be used against defendant in an adversarial proceeding.

For these reasons, the government respectfully urges the Court to find that the ATF's attorney-client privilege was not waived, and to deny defendant's Motion.

II.   **STATEMENTS AT ISSUE**

The Court's order directs the government to address four groups of statements (the "Statements") by the case agent, contained in the search warrant affidavit (Ex. 2 to the Motion) and Grand Jury transcript (Ex. 11 to the Motion), specifically:

Statement 1

Based on my training and experience and my conversations with ATF Division Counsel Paul Ware, such conduct still constitutes engaging in the business of manufacturing and dealing in firearms.[1]

Statement 2

Based upon my training and experience, and my conversations with ATF Division Counsel Paul Ware, I understand that where, as here, the firearms are manufactured using the business' equipment, are manufactured at the business' premises, are manufactured at the guidance, direction, and supervision of the business' employees while the "customer" takes token steps in the manufacturing process, such conduct constitutes the manufacture of firearms.[2]

Statement 3

Based on my training and experience, and my conversations with ATF Division Counsel Paul Ware, I know that there is no exception to the manufacturing or dealing licensing requirement for "gun clubs."[3]

Statement 4

Exhibit 11, pages 29-30 (containing excerpts of the case agent's testimony before the Grand Jury).

---

[1] Ex. 2, page 8.   The Court's order lists page "2" of the search warrant affidavit, but defense Exhibit 2 does not contain a page "2" in the affidavit pagination.   The government understood the Court to refer to the second page of Exhibit 2, which is affidavit page 8.

[2] Ex. 2, page 19.

[3] Ex. 2, page 24

2

## III. LEGAL STANDARD

The attorney-client privilege protects confidential information disclosed by a client to an attorney in order to obtain legal assistance.  See Fisher v. United States, 425 U.S. 391, 403 (1976); Tax Analysts v. I.R.S., 117 F.3d 607, 618 (D.C. Cir. 1997).  The privilege also protects communications from attorneys to their clients if the communications "rest on confidential information obtained from the client." Id. (citing In re Sealed Case, 737 F.2d 94, 99 (D.C. Cir. 1984)).  In the governmental context, the "client" may be the agency and the attorney may be an agency lawyer.  Id.

Disclosure of the content of a privileged communication waives the attorney-client privilege.  Weil v. Inv./Indicators, Research & Mgmt., Inc., 647 F.2d 18, 25 (9th Cir. 1981). "Consistent with defining who personifies a governmental client under the attorney-client privilege, courts follow corporate precedence to determine who has the authority to waive the government's privilege protection." Attorney-Client Privilege in the United States § 9:20. In the corporate context, the Supreme Court has explained that "the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors."  Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 348 (1985).  See also United States v. Ghavami, 882 F.Supp.2d 532, 544 (S.D.N.Y. 2012) ("[A] corporate employee without authority cannot effect waiver of a privilege that belongs to the corporation.").

1  IV.  **ARGUMENT**

2       **A.   The Statements Did Not Waive the Attorney-Client Privilege**

3            The Statements did not waive the ATF's attorney-client

4  privilege, because the Statements were not based on and did not

5  convey confidential information, and because the case agent was not

6  authorized to waive the agency's privilege.

7            1.    The Statements Did Not Convey Confidential

8                  Communications

9            The Statements did not constitute a privilege waiver, because

10  they did not disclose confidential communications.  Statement 4

11  merely reports the fact of consultation with counsel and the general

12  purpose and timeframe of the consultation.  Such statements convey no

13  substantive communications and are not privileged.  See United States

14  v. Bauer, 132 F.3d 504, 509 (9th Cir. 1997) (noting that "not all

15  communications between attorney and client are privileged,

16  including... the general purpose of the work performed").

17            Nor do Statements 1, 2, and 3 reveal the substance of

18  confidential communications.  Instead, the Statements report that the

19  case agent's understanding of the relevant statute was formed in part

20  by his training and experience, and in part by his conversations with

21  counsel.  Even to the extent that the Statements are construed to

22  report ATF counsel's statements to the case agent, those statements

23  do not "rest on confidential information obtained from the client."

24  Tax Analysts v. I.R.S., 117 F.3d 607, 618 (D.C. Cir. 1997).

25  Instead, the inference is that the statements were based on the case

26  agent's description to agency counsel of the manufacturing conduct at

27  Rohg Industries.  Far from being confidential, information regarding

28

4

1  that conduct is set forth in the search warrant affidavit.

2  Furthermore, the disclosures are in the nature of basic statements of

3  the law, which also militates against a finding of waiver.  See

4  Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 863 (D.C.

5  Cir. 1980) (holding that agency attorneys' "neutral, objective

6  analyses of agency regulations" were not covered by the attorney-

7  client privilege).

8          2.   Agent Jackson Was Not Authorized to Waive the ATF's

9               Attorney-Client Privilege

10      The Statements did not effect a waiver for the additional reason

11  that the case agent who made the Statements was not the privilege

12  holder.  The attorney-client privilege belongs to the ATF, and the

13  case agent, Special Agent Jackson, was not authorized to waive the

14  agency's privilege.  Special Agent Jackson was a line agent.  He was

15  not a supervisor, and he did not hold a position at the ATF analogous

16  to an officer or director of a corporation.  For this reason, he

17  lacked authority to waive the agency's privilege.  See Oasis Int'l

18  Waters, Inc. v. United States, 110 Fed. Cl. 87, 111 (2013)

19  (concluding that government consultant lacked sufficient authority to

20  waive government's attorney-client privilege); Powers v. Chi. Transit

21  Auth., 890 F.2d 1355, 1359 n.2 (indicating that a "high-ranking"

22  employee may have the authority to waive the privilege on behalf of

23  the Chicago Transit Authority); Guidiville Rancheria of Cal. v.

24  United States, 2013 WL 5303748, *2 (N.D. Cal. 2013) (holding that

25  disclosure of a privileged communication by a city councilmember did

26  not waive the privilege because only the council, acting as a

27  legislative body, could authorize disclosure, and therefore waiver);

28

Interfaith Hous. Del., Inc. v. Town of Georgetown, 841 F. Supp. 1393, 1399–1400 (D. Del. 1994) (holding that a town council member did not have authority to waive the privilege because a council member is unlike the mayor of a city or the president of a corporation, who have "clear leadership positions which give them authority to bind their respective principals" and, accordingly, waive the privilege).

## B.   A Subject-Matter Waiver is Not Appropriate

Even if the Court finds a waiver of the attorney-client privilege, the waiver would not be a subject-matter waiver, under the governing rule, and based on the underlying policy of fairness.

Federal Rule of Evidence 502 controls the scope of a waiver of the attorney-client privilege in a federal proceeding.  A waiver of the attorney-client privilege extends to an undisclosed communication or information only if (1) the waiver is intentional, (2) the disclosed and undisclosed communications or information concern the same subject matter, and (3) the disclosed material and the undisclosed material "ought in fairness to be considered together." Fed. R. Evid. 502(a).

The Advisory Committee Notes to Rule 502(a) state that subject matter waiver is reserved for "unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary."  The Advisory Committee Notes go on to explain that subject matter waivers are "limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner." Id. (emphasis added).

Here, even assuming the Court finds a waiver, the first requirement of Rule 502(a) is not satisfied, because the waiver was not intentional.  The case agent did not expressly waive the privilege.  Instead, the statements in the search warrant were meant to convey that the agent had consulted with legal counsel regarding the search warrant.  Despite defendant's suggestion to the contrary, it is not uncommon in criminal cases that agents consult with government attorneys in order to confirm that defendants have violated the law.  That is why agencies have attorneys.  While the search warrant affidavit admittedly went further than it needed to go in referencing discussions with counsel, it was not intended to effect a privilege waiver.  While the agent did intend the disclosure, in order to be complete, thorough and accurate in his affidavit to the Magistrate Judge, he did not intend to waive his agency's attorney-client privilege.  See Rule 502(a)(1) (requiring the "waiver," not the disclosure, to be intentional).

Moreover, fairness does not require a subject-matter waiver in this case.  There was nothing "misleading" or "unfair" about the case agent's Statements in the search warrant or Grand Jury testimony.  This becomes clear when one considers that subject matter privilege waivers are "premised on the *unfairness* to the adversary of *having to defend* against the privilege holder's claim without access to pertinent privileged materials that might refute the claim." John Doe Co. v. U.S., 350 F.3d 299, 304 (2d Cir. 2003) (discussing the policy underlying privilege waivers).

Here, there is no unfairness, because even read broadly, the disclosed Statements simply relate agency counsel's legal opinions,

7

1    and those opinions are not being deployed against defendant in an

2    adversarial proceeding such as pretrial litigation or a trial.

3    Instead, the disclosures were made in an application for a search

4    warrant, which is an ex parte proceeding.   The government will not

5    present the disclosures to the jury at trial, because agency

6    counsel's legal opinions are irrelevant to this case.   The Court will

7    instruct the jury on the law — not defense counsel, not the

8    prosecution, and not agency counsel.

9         For the same reasons, there is no prejudice to defendant in

10   withholding the ATF's undisclosed privileged materials on the same

11   subject matter.   Phrased in the language of John Doe Co., finding a

12   subject-matter waiver would not permit defendant to "refute" any

13   "claim" that was advanced with the disclosure of the Statements.

14   Again, read broadly, the Statements tend to reveal agency counsel's

15   view of the charged statute.   That view is either consistent with the

16   law, or it is not.   If defendant wishes to "refute" agency counsel's

17   legal opinion for any reason, he can do so by arguing for a different

18   interpretation of the law.

19        Similarly, fairness does not require the Court to order a

20   subject-matter waiver to support defendant's forthcoming vagueness

21   challenge.[4]   At the hearing on the Motion, the defense claimed it

22   needed the requested documents to support an argument that the ATF's

23   views of the charged statute will show that the statute was vague.

24   But to the extent that the views of an individual agent or agency

25

26        [4] Although the defense has indicated it plans to bring a motion
     challenging the indictment on vagueness grounds, that motion is not
27   before the Court.   And as the government noted in its Opposition,
     Rule 16 is not a vehicle for discovery to support pre-trial motions.
28

                                    8

attorney are even relevant to a vagueness challenge, the defense does not need further discovery to make this argument.

Because extending a waiver to the ATF's undisclosed attorney-client privileged materials would not comport with Rule 502 and would not serve the underlying policy of subject-matter waivers, the Court should decline to order such a waiver.

**C.   Even Assuming the Court Finds a Subject-Matter Waiver, the Effect in This Case Would Be Limited**

Even if the Court were to find a subject-matter waiver of the ATF's attorney-client privilege, the government anticipates that the effect in this case would be limited.

**1.   Waiver of the Attorney-Client Privilege Would Not Make the Requested Documents Discoverable**

Even if the Court were to find a waiver of the ATF's attorney-client privilege with respect to certain subject matter, that would not render the subject matter discoverable.  A criminal defendant is not entitled to receive all non-privileged information in the government's possession.  For the reasons discussed in the government's Opposition, the documents sought by the defense are not discoverable, because they are not material to the defense, they have no bearing on defendant's state of mind, they constitute the government's internal investigative files, and they are covered by multiple privileges.[5]  A waiver of the attorney-client privilege

---

[5] The Court directed the government only to address the attorney-client privilege in this Supplemental Brief.  However, even assuming the Court finds a subject-matter waiver of the attorney-client privilege, the materials covered will likely fall under additional privileges that have not been waived, including attorney work product protection and the deliberative process privilege.

9

1   would not make those materials subject to criminal discovery and

2   would therefore have no effect on the resolution of the Motion that

3   is currently before the Court.

4          2.   <u>Only Request No. 4 Implicates Attorney-Client Material</u>

5   Moreover, even if the documents requested in defendant's Motion

6   were discoverable, an attorney-client privilege waiver would affect

7   only Request No. 4, because that is the only request that calls for

8   communications between ATF agents and ATF counsel.

9          Thus, if the Court were to (1) grant defendant's Motion and (2)

10  find a subject-matter waiver of the ATF's attorney-client privilege,

11  the effect would be to make available to the defense communications

12  between ATF counsel and ATF employees that are not otherwise

13  privileged, concerning the legality of the firearms manufacturing

14  activities at Rohg Industries.

15  **V.   CONCLUSION**

16         For the foregoing reasons, the government urges the Court to

17  find no waiver of the ATF's attorney-client privilege.  However, if

18  the Court does find a waiver of the attorney-client privilege, the

19  waiver should be limited to the statements that have already been

20  disclosed.

21

22

23

24

25

26

27

28