1

2

3

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING


UNITED STATES OF AMERICA,      ) CERTIFIED TRANSCRIPT
                               )
                  Plaintiff, )
        vs.                    )
                               )  SACR-14-00167-JVS
JOSEPH ROH,                    )
                               )
                  Defendant. )
-----------------------------)


REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

June 4, 2019


SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA  92701
(714) 543-0870

1    APPEARANCES OF COUNSEL:

2    For the Plaintiff:

3    NICOLA T. HANNA
     United States Attorney
4    LAWRENCE S. MIDDLETON
     Assistant United States Attorney
5    Chief, Criminal Division
     SHAWN J. NELSON
6    Assistant United States Attorney
     Acting Deputy Chief, International Narcotics
7    Money Laundering & Racketeering Section
     BENJAMIN D. LICHTMAN
8    Assistant United States Attorney
     United States Courthouse
9    411 West Fourth Street, Suite 8000
     Santa Ana, CA  92701
10   (714) 338-3530

11   For the Defendant:

12   GREG NICOLAYSEN
     27240 Turnberry Lane, Suite 200
13   Valencia, CA  91355
     (818) 970-7247

14

15

16

17

18

19

20

21

22

23

24

25

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

|   | 1 | SANTA ANA, CALIFORNIA; TUESDAY, JUNE 4, 2019; 2:02 P.M. |
|---|---|---|

02:02  2       THE CLERK:  Item No. 2, SACR-14-00167-JVS, United

02:02  3   States of America versus Joseph Roh.

02:02  4       Counsel, please state your appearances for the

02:02  5   record.

02:02  6       MR. LICHTMAN:  Good afternoon, Your Honor.  Shawn

02:02  7   Nelson and Benjamin Lichtman for the United States.

02:03  8       MR. NICOLAYSEN:  Good afternoon, Your Honor.  Greg

02:03  9   Nicolaysen with Mr. Roh who is present on bond.

02:03  10      THE COURT:  Good afternoon.

02:03  11      I note that a plea agreement was filed on behalf

02:03  12  of Mr. Roh on May 6, 2019.  I will direct it be made part of

02:03  13  these proceedings.

02:03  14      Good afternoon, Mr. Roh.

02:03  15      THE DEFENDANT:  Good afternoon.

02:03  16      THE COURT:  Sir, before you I accept your plea of

02:03  17  guilty, I need to make sure that you understand the nature

02:03  18  of the charge against you and the consequences of any guilty

02:03  19  plea.  I also need to make sure that you understand the

02:03  20  constitutional and statutory rights that you will be giving

02:03  21  up by pleading guilty.

02:03  22      For those reasons, I am going to ask you a number

02:03  23  of questions.  If any of my questions are unclear, please

02:03  24  let me know, and I would be happy to rephrase the questions.

02:03  25      THE DEFENDANT:  Yes, Your Honor.

| | | |
|---|---|---|
| 02:03 | 1 | THE COURT:  You have the right to consult with |
| 02:03 | 2 | Mr. Nicolaysen at any point, so if you would like to do |
| 02:04 | 3 | that, please let me know.  Okay? |
| 02:04 | 4 | THE DEFENDANT:  Yes, Your Honor. |
| 02:04 | 5 | THE CLERK:  At this time the clerk is going to put |
| 02:04 | 6 | you under oath. |
| 02:04 | 7 | (Defendant sworn) |
| 02:04 | 8 | THE COURT:  Sir, do you understand that you are |
| 02:04 | 9 | now under oath and that if you answer any of my questions |
| 02:04 | 10 | falsely you could be prosecuted later for perjury or the |
| 02:04 | 11 | making of a false statement? |
| 02:04 | 12 | THE DEFENDANT:  I do. |
| 02:04 | 13 | THE COURT:  State your true and correct name. |
| 02:04 | 14 | THE DEFENDANT:  Joseph Roh. |
| 02:04 | 15 | THE COURT:  How old are you? |
| 02:04 | 16 | THE DEFENDANT:  I am 51 years old. |
| 02:04 | 17 | THE COURT:  Tell me about your education. |
| 02:04 | 18 | THE DEFENDANT:  I finished three years of college |
| 02:04 | 19 | and elected to get married in that fourth year. |
| 02:04 | 20 | THE COURT:  Have you recently been treated for any |
| 02:04 | 21 | mental illness? |
| 02:04 | 22 | THE DEFENDANT:  No. |
| 02:04 | 23 | THE COURT:  Have you recently been treated for any |
| 02:04 | 24 | addition to narcotics? |
| 02:04 | 25 | THE DEFENDANT:  No. |

02:04  1          THE COURT:  Have you taken any medications, drugs,
02:04  2   or alcohol within the past 72 hours?
02:04  3          THE DEFENDANT:  I take my normal medications that
02:04  4   I take for my diabetes and my neuropathy, but other than
02:04  5   that, no.
02:04  6          THE COURT:  How long have you been on that
02:05  7   regimen?
02:05  8          THE DEFENDANT:  For 15 years.
02:05  9          THE COURT:  Are you able to carry out your
02:05 10   everyday activities while taking those medicines?
02:05 11          THE DEFENDANT:  Yes.
02:05 12          THE COURT:  How do you feel today?
02:05 13          THE DEFENDANT:  I feel fine.
02:05 14          THE COURT:  Do you feel alert?
02:05 15          THE DEFENDANT:  Yes.
02:05 16          THE CLERK:  Do you feel that your thinking powers
02:05 17   are working well?
02:05 18          THE DEFENDANT:  Yes.
02:05 19          THE COURT:  Do you think you have a frame of mind
02:05 20   today such that you are able to make an important decision?
02:05 21          THE DEFENDANT:  Yes.
02:05 22          THE COURT:  Do you suffer from any mental
02:05 23   condition that would prevent you from understanding fully
02:05 24   the nature of the charge against you and the consequences of
02:05 25   any guilty plea?

02:05   1              THE DEFENDANT:  No, Your Honor.

02:05   2              THE COURT:  Is there any reason at all why we

02:05   3      cannot go forward with your plea?

02:05   4              THE DEFENDANT:  No.

02:05   5              THE COURT:  Mr. Nicolaysen, have you had a chance

02:05   6      to speak to your client immediately prior to this

02:05   7      proceeding?

02:05   8              MR. NICOLAYSEN:  I have.

02:05   9              THE COURT:  Do you have any reason to believe that

02:05   10     the defendant is not competent to enter his plea at this

02:05   11     time?

02:05   12             MR. NICOLAYSEN:  No.

02:05   13             THE CLERK:  Do you know of any reason why we

02:05   14     should not go forward?

02:05   15             MR. NICOLAYSEN:  No.

02:05   16             THE CLERK:  Is it your opinion that your client is

02:05   17     in the full possession of his faculties?

02:05   18             MR. NICOLAYSEN:  It is.

02:05   19             THE COURT:  The Court having observed the

02:06   20     defendant and having considered his responses and the

02:06   21     responses of counsel, the Court finds that the defendant is

02:06   22     in the full possession of his faculties.

02:06   23             Sir, you have a number of constitutional rights

02:06   24     that you will be giving up by pleading guilty.  I am going

02:06   25     to tell you about those at this time.

02:06   1          You have the right to a speedy and public trial.

02:06   2   You have the right to be tried by a jury.  Alternatively,

02:06   3   you have the right to waive a jury trial and to be tried by

02:06   4   the Court.  In either case, you have the right to persist in

02:06   5   your plea of not guilty, and you have the right to make the

02:06   6   government prove that you are in fact guilty beyond a

02:06   7   reasonable doubt.

02:06   8          You have the right to be represented by an

02:06   9   attorney throughout these proceedings, and if you cannot

02:06   10  afford one, one will be appointed for you free of charge.

02:06   11         You have the right to confront and cross-examine

02:06   12  all witnesses called to testify against you.  You have the

02:06   13  right to present witnesses on your own behalf, and you have

02:06   14  the right to have them subpoenaed, that is, compelled by

02:06   15  Court order to come here to testify.

02:07   16         You also have a privilege against

02:07   17  self-incrimination.  That is the right to remain silent.

02:07   18  However, by entering a plea of guilty, you are giving up

02:07   19  that right because you are incriminating yourself.  You have

02:07   20  the right to testify on your own behalf, but you cannot be

02:07   21  compelled to do so or to incriminate yourself in any way.

02:07   22  If you do not testify at trial, that fact cannot be used

02:07   23  against you.

02:07   24         In the event of a conviction after trial, you have

02:07   25  the right to appeal the conviction and the sentence.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 02:07 | 1 | Have you discussed these rights with |
| 02:07 | 2 | Mr. Nicolaysen? |
| 02:07 | 3 | THE DEFENDANT:  Yes. |
| 02:07 | 4 | THE COURT:  Would you like any additional time now |
| 02:07 | 5 | to discuss these rights with him? |
| 02:07 | 6 | MR. NICOLAYSEN:  No. |
| 02:07 | 7 | THE CLERK:  Do you understand that you have these |
| 02:07 | 8 | rights and that if you enter a plea of guilty and the plea |
| 02:07 | 9 | is accepted by the Court you will be giving up the right to |
| 02:07 | 10 | a jury trial and all the other rights I have just described |
| 02:07 | 11 | to you? |
| 02:07 | 12 | THE DEFENDANT:  Yes. |
| 02:07 | 13 | THE CLERK:  Do you give up these rights? |
| 02:07 | 14 | THE DEFENDANT:  Yes. |
| 02:07 | 15 | THE COURT:  Mr. Nicolaysen, are you satisfied that |
| 02:07 | 16 | each of these waivers is made knowingly and voluntarily? |
| 02:08 | 17 | MR. NICOLAYSEN:  I am. |
| 02:08 | 18 | THE COURT:  Do you join in and concur in each of |
| 02:08 | 19 | the waivers? |
| 02:08 | 20 | MR. NICOLAYSEN:  So join and concur. |
| 02:08 | 21 | THE CLERK:  Sir, in Count One of the Indictment, |
| 02:08 | 22 | you are charged with violating Title 18, United States Code, |
| 02:08 | 23 | Section 922(a)(1)(A), engaging in the business of |
| 02:08 | 24 | manufacturing firearms without a license, which is a felony. |
| 02:08 | 25 | Would the government recite the elements of the |

02:08  1  charge, please.

02:08  2      MR. NELSON:  Yes.  In order for the defendant to

02:08  3  be guilty of the violation of Title 18, United States Code,

02:08  4  Section 922(a)(1)(A), the following must be true:  (1) the

02:08  5  defendant was willfully engaged in the business of

02:08  6  manufacturing firearms within the dates specified in the

02:08  7  Indictment; and

02:08  8      (2) the defendant did not then have a license as a

02:08  9  firearms manufacturer.

02:08  10     THE COURT:  Sir, do you understand the nature of

02:08  11 the charge against you?

02:08  12     THE DEFENDANT:  Yes.

02:08  13     THE COURT:  Have you discussed the charge and each

02:09  14 of the elements of the crime with Mr. Nicolaysen?

02:09  15     THE DEFENDANT:  Yes.

02:09  16     THE COURT:  Do you have any questions about the

02:09  17 charge against you?

02:09  18     THE DEFENDANT:  No, Your Honor.

02:09  19     THE COURT:  Have you been advised of the maximum

02:09  20 penalties that can be imposed for the charge to which you

02:09  21 are offering to plead guilty?

02:09  22     THE DEFENDANT:  Yes.

02:09  23     THE CLERK:  Mr. Nelson, would you recite those,

02:09  24 please.

02:09  25     MR. NELSON:  The statutory maximum sentence that

02:09    1    the Court can impose for the violation of Title 18, United

02:09    2    States Code, Section 922(a)(1)(A), is:  five years'

02:09    3    imprisonment; a three-year period of supervised release; a

02:09    4    fine of $1 million, or twice the gross gain or gross loss

02:09    5    resulting from -- I'm sorry -- $250,000, or twice the gross

02:09    6    gain or gross loss resulting from the offense -- I believe

02:09    7    that's an error in the plea agreement -- whichever is

02:09    8    greatest; and a mandatory special assessment of $100.

02:09    9             MR. NICOLAYSEN:  Your Honor, if the Court, please,

02:09   10    I'm prepared to orally stipulate to revise the dollar amount

02:10   11    on line 5 of page 4 without the need to refile the

02:10   12    agreement.

02:10   13             THE COURT:  Okay.  Line 5 of the plea agreement

02:10   14    will be amended by interlineation to state a total fine of

02:10   15    $250,000.

02:10   16             Sir, you do you have any questions about the

02:10   17    penalties that can be imposed?

02:10   18             THE DEFENDANT:  No.

02:10   19             THE COURT:  Do you understand that there is no

02:10   20    parole and that if you are sentenced to prison you will not

02:10   21    be released on parole?

02:10   22             THE DEFENDANT:  Yes.

02:10   23             THE COURT:  You may be subject to supervised

02:10   24    release for a number of years after your release from

02:10   25    prison.  Do you understand that if you violate any of the

02:10 1    terms and conditions of your supervised release you could be

02:10 2    given more time in prison?

02:10 3              THE DEFENDANT:  Yes.

02:10 4              MR. NICOLAYSEN:  Your Honor, would the Court allow

02:10 5    me just to interject?

02:10 6              THE COURT:  Sure.

02:10 7              MR. NICOLAYSEN:  As there is a Diversion Agreement

02:10 8    attached, I have advised Mr. Roh that he is subject to all

02:10 9    of these penalties if he breaches that agreement and the

02:11 10   agreement is revoked.  I would ask the Court to allow us to

02:11 11   acknowledge that.  So if he satisfies all of the diversion

02:11 12   conditions of these particular provisions, the traditional

02:11 13   plea agreement conditions would not apply.  So when Your

02:11 14   Honor says do you understand that supervised release is a

02:11 15   period following incarceration, all of this is predicated on

02:11 16   a breach of the Diversion Agreement and that agreement being

02:11 17   revoked.

02:11 18             THE COURT:  Well, it's also premised on the

02:11 19   assumption that he in fact will be accepted into the

02:11 20   program.

02:11 21             MR. NICOLAYSEN:  Well, I don't think that is going

02:11 22   to be an issue.

02:11 23             THE COURT:  Well, I'm not saying that it is,

02:11 24   but --

02:11 25             MR. NICOLAYSEN:  I believe that that has already

02:11   1   been established, and I appreciate the Court bringing that

02:11   2   up because the letter states the U.S. Attorney's Office has

02:11   3   already reached the determination that a diversion applies.

02:11   4           MR. NELSON:  We consulted with Pretrial, and

02:11   5   Pretrial is in agreement that he will be accepted into the

02:11   6   Diversion Program.

02:11   7           THE COURT:  It hasn't come to the presiding judge

02:12   8   for that determination.  I believe I have to sign off.

02:12   9           MR. NICOLAYSEN:  I'm not aware that that's a

02:12   10  requirement.  Is that an issue that perhaps we should

02:12   11  address at this time before we complete the Rule 11

02:12   12  colloquy?

02:12   13          MR. NELSON:  Unlike a CASA diversion or a CASA

02:12   14  proceeding that would require such approval, I believe this

02:12   15  sort of diversion -- it's often colloquially referred to as

02:12   16  the Brooklyn Program where it originated -- is an agreement

02:12   17  between the defendant, the government, and Pretrial so long

02:12   18  as Your Honor accepts the plea agreement.

02:13   19          THE COURT:  Does taking his plea signify that I

02:13   20  accept the fact that the government and the defendant have

02:13   21  agreed to this Diversion Program?

02:13   22          MR. NELSON:  Yes.

02:13   23          THE COURT:  Well, I don't think I have any choice

02:13   24  in accepting a plea.

02:13   25          MR. NELSON:  You have your usual discretion to

02:13  1  ensure that it's knowing, voluntary --

02:13  2          THE COURT:  Well, right.  Assuming all those

02:13  3  facts, I don't believe I have the discretion to make any

02:13  4  judgment other than the charging judgment of the U.S.

02:13  5  Attorney's Office.

02:13  6          MR. NELSON:  Yes, I believe that's true.

02:13  7          THE COURT:  That's my understanding of a typical

02:13  8  plea.  I have just no discretion to do that.

02:13  9          Well, let me acknowledge on the record the

02:14 10  understanding that you have been accepted for this program,

02:14 11  and the consequences that I am outlining may depend on your

02:14 12  failing to complete the program.

02:14 13          With that in mind, sir, do you understand that you

02:14 14  may be subject to supervised release for a number of years

02:14 15  after your release from prison?

02:14 16          THE COURT:  I didn't understand.

02:14 17          THE COURT:  Sir, for today's purposes, I am not

02:14 18  making any assumption about whether you can and do

02:14 19  successfully complete the program.  Accordingly, I am

02:14 20  telling you of the consequences if you don't complete the

02:14 21  program.  And whether those consequences come to bear, I

02:14 22  don't know, but you ought to know what the downside is if

02:14 23  for any reason you don't successfully complete the program.

02:14 24          THE DEFENDANT:  Yes, Your Honor.

02:14 25          THE COURT:  Okay.  Do you understand that you may

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

02:14   1   be subject to supervised release for a number of years after

02:14   2   your release from prison?

02:14   3           THE DEFENDANT:  Yes.

02:14   4           THE CLERK:  Do you understand that if you are

02:14   5   currently on probation, parole, or supervised release for

02:15   6   another offense that your plea in this case may result in a

02:15   7   violation of that probation, parole, or supervised release?

02:15   8           THE DEFENDANT:  Yes.

02:15   9           THE COURT:  Have you discussed the possible

02:15   10  punishments, the facts, and the defenses with

02:15   11  Mr. Nicolaysen?

02:15   12          THE DEFENDANT:  Yes.

02:15   13          THE COURT:  Among the factors that the Court will

02:15   14  consider in sentencing you are the Sentencing Reform Act of

02:15   15  1984 and the United States Sentencing Commission Guidelines.

02:15   16          Has Mr. Nicolaysen explained to you the various

02:15   17  elements and factors that the Court will take into account

02:15   18  in analyzing your case under the guidelines?

02:15   19          THE DEFENDANT:  Yes.

02:15   20          THE COURT:  Do you understand that any sentence

02:15   21  ultimately imposed may differ from any estimate

02:15   22  Mr. Nicolaysen may have given you?

02:15   23          THE DEFENDANT:  I didn't understand.

02:15   24          THE COURT:  Sure.  In the event that he has given

02:15   25  you an estimate of what your sentence might be in the event

02:15  1    that you don't complete the program, I just want you to be

02:16  2    aware that if I am in that situation and I do need to

02:16  3    sentence you that the sentence may be different than any

02:16  4    recommendation or assessment he may have had made for you?

02:16  5              THE DEFENDANT:  Yes.

02:16  6              THE COURT:  The presentence report will contain a

02:16  7    recommended guidelines range.  There will be a high and a

02:16  8    low to the range.  That range is entirely advisory, which

02:16  9    means that in theory I could sentence you anywhere from no

02:16  10   time in prison to the statutory maximum of five years.

02:16  11             Do you understand that the Court will

02:16  12   independently consider both the presentence report and any

02:16  13   objections of the parties and will analyze your case under

02:16  14   the guidelines taking into account the nature of the

02:16  15   offense; what your prior record is, if any; whether you have

02:16  16   obstructed justice; and whether you have accepted

02:16  17   responsibility?

02:16  18             THE DEFENDANT:  Yes.

02:16  19             THE COURT:  Do you understand that the Court has

02:16  20   the authority to depart upward or downward from the advisory

02:16  21   guideline range and will take into account other statutory

02:17  22   factors under the Sentencing Reform Act that could result in

02:17  23   a sentence that is either greater or lesser than called for

02:17  24   by the advisory guidelines?

02:17  25             THE DEFENDANT:  Yes.

02:17   1          THE COURT:  Do you understand that for all these

02:17   2   reasons neither Mr. Nicolaysen, nor I, nor anyone can tell

02:17   3   you today with certainty which guidelines apply or what your

02:17   4   sentence will be?

02:17   5          THE DEFENDANT:  Yes.

02:17   6          THE COURT:  Do you understand that if the sentence

02:17   7   which I ultimately impose is more severe than you

02:17   8   anticipated you will not be allowed to withdraw your plea?

02:17   9          THE DEFENDANT:  Yes.

02:17   10          THE COURT:  As I indicated, a plea agreement has

02:17   11   been filed in this case.  Have you read the plea agreement?

02:17   12          THE DEFENDANT:  Yes.

02:17   13          THE COURT:  Have you discussed the plea agreement

02:17   14   and all of its terms with Mr. Nicolaysen?

02:17   15          THE DEFENDANT:  Yes.

02:17   16          THE COURT:  Did you sign the plea agreement?

02:17   17          THE DEFENDANT:  Yes.

02:17   18          THE COURT:  Do you understand the plea agreement

02:17   19   and all of its terms?

02:17   20          THE DEFENDANT:  Yes.

02:17   21          THE COURT:  Would you like any additional time now

02:17   22   to discuss the plea agreement with Mr. Nicolaysen?

02:18   23          THE DEFENDANT:  No, Your Honor.

02:18   24          THE COURT:  Do you understand that the Court is

02:18   25   not a party to the plea agreement and is not bound by any of

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

02:18   1   its terms?

02:18   2           THE DEFENDANT:  Yes.

02:18   3           THE COURT:  As part of the plea agreement, the

02:18   4   government agrees to make certain recommendations at the

02:18   5   time of sentencing.  Do you understand that the Court is not

02:18   6   obligated to follow the government's recommendations?

02:18   7           THE DEFENDANT:  Yes.

02:18   8           THE COURT:  The plea agreement contains an agreed

02:18   9   offense level calculation.  Do you understand that the Court

02:18   10  will sentence you on the basis of facts known to the Court

02:18   11  at the time of sentencing, which may be in addition to or

02:18   12  even different from the facts understood by the parties when

02:18   13  they entered into the plea agreement?

02:18   14          THE DEFENDANT:  Yes.

02:18   15          THE COURT:  Do you understand that the Court is

02:19   16  not bound by the parties' offense level calculation and will

02:19   17  make its own calculation?

02:19   18          THE DEFENDANT:  Yes.

02:19   19          THE COURT:  The plea agreement also contains a

02:19   20  limited waiver of your right to appeal.

02:19   21          Mr. Nelson, would you recite those provisions,

02:19   22  please.

02:19   23          MR. NELSON:  Yes, Your Honor.

02:19   24          As to the waiver of appeal of conviction, with the

02:19   25  exception of an appeal based on a claim that defendant's

02:19   1   guilty plea was involuntary, by pleading guilty, defendant

02:19   2   is waiving and giving up any right to appeal defendant's

02:19   3   conviction on the offense to which defendant is pleading

02:19   4   guilty.  Defendant understands that this waiver includes,

02:19   5   but is not limited to, arguments that the statute to which

02:19   6   defendant is pleading guilty is unconstitutional, and any

02:19   7   and all claims that the statement of facts provided herein

02:19   8   is insufficient to support defendant's plea of guilty.

02:19   9           As to the waiver of appeal of the sentence,

02:19  10   provided that the Court imposes a total term of imprisonment

02:19  11   on all counts of conviction of no more than 12 months,

02:19  12   defendant gives up the right to appeal all of the following:

02:20  13   (a) the procedures and calculations used to determine and

02:20  14   impose any portion of the sentence; (b) the term of

02:20  15   imprisonment imposed by the Court; (c) the fine imposed by

02:20  16   the Court, provided it is within the statutory maximum; (d)

02:20  17   to the extent permitted by law, the constitutionality or

02:20  18   legality of defendant's sentence, provided it is within the

02:20  19   statutory maximum; (e) the term of probation or supervised

02:20  20   release imposed by the Court, provided it is within the

02:20  21   statutory maximum; and (f) any of the following conditions

02:20  22   of probation or supervised release imposed by the Court:

02:20  23   the conditions set forth in General Order 18-10 of this

02:20  24   Court; the drug testing conditions mandated by 18 USC

02:20  25   Sections 3563(a)(5) and 3583(d); and the alcohol and drug

02:20  1  use conditions authorized by 18 USC Section 3563(b)(7).

02:21  2          As to the government, the USAO agrees that,

02:21  3  provided (a) all portions of the sentence are at or below

02:21  4  the statutory maximum specified above, the USAO gives up its

02:21  5  right to appeal any portion of the sentence.

02:21  6          THE COURT:  Sir, when you read the plea agreement,

02:21  7  did you read the passage Mr. Nelson has just read?

02:21  8          THE DEFENDANT:  Yes.

02:21  9          THE COURT:  Did you understand it at the time?

02:21  10          THE DEFENDANT:  Yes.

02:21  11          THE COURT:  Did you understand it as he read it

02:21  12  again today?

02:21  13          THE DEFENDANT:  Yes.

02:21  14          THE CLERK:  Did you discuss waiving your right to

02:21  15  appeal with Mr. Nicolaysen?

02:21  16          THE DEFENDANT:  Yes.

02:21  17          THE COURT:  Based on that conversation and having

02:21  18  considered the matter, do you give up your right to appeal

02:21  19  on the terms and conditions in the plea agreement?

02:21  20          THE DEFENDANT:  Yes.

02:21  21          THE COURT:  Are you a citizen of the United

02:21  22  States?

02:21  23          THE DEFENDANT:  Yes.

02:21  24          THE COURT:  By birth?

02:21  25          THE DEFENDANT:  No.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

02:22   1          THE COURT:  Naturalized?

02:22   2          THE DEFENDANT:  Naturalized.

02:22   3          THE COURT:  When?

02:22   4          THE DEFENDANT:  1980 something.  It was right

02:22   5   before college.  It was in the '80s.

02:22   6          THE COURT:  Do you understand that a plea of

02:22   7   guilty may deprive you of valuable civil rights, such as the

02:22   8   right to vote, the right to serve on a jury, the right to

02:22   9   hold public office, and the right to possess any kind of a

02:22  10   firearm?

02:22  11          THE DEFENDANT:  Yes.

02:22  12          THE COURT:  Have any promises been made to you in

02:22  13   exchange for your plea of guilty other than those in the

02:22  14   plea agreement?

02:22  15          THE DEFENDANT:  No.

02:22  16          THE COURT:  Has anyone made any threats or used

02:22  17   any force against you or your family or anyone near and dear

02:22  18   to you to get you to plead guilty?

02:22  19          THE DEFENDANT:  No.

02:22  20          THE COURT:  Are you pleading guilty voluntarily

02:22  21   and of your own free will?

02:22  22          THE DEFENDANT:  Yes.

02:22  23          THE COURT:  Have you told Mr. Nicolaysen all the

02:22  24   facts and circumstances surrounding any statements,

02:23  25   confessions, or other evidence that was obtained from you by

02:23  1   anyone?

02:23  2           THE DEFENDANT:  Yes.

02:23  3           THE COURT:  Have you told him everything you know

02:23  4   about this case?

02:23  5           THE DEFENDANT:  Yes.

02:23  6           THE COURT:  Mr. Nelson, what facts would the

02:23  7   government prove if the government proceeded to trial?

02:23  8           MR. NELSON:  The government would prove the

02:23  9   following facts:

02:23  10          From on or about January 12, 2013, through on or

02:23  11  about February 6, 2014, defendant engaged in the business of

02:23  12  manufacturing firearms without a license by making AR-15

02:23  13  type rifles and pistols that would expel a projectile by

02:23  14  action of an explosive.  Defendant did this through a

02:23  15  process that included machining the lower assembly of an

02:23  16  AR-15 type firearm and then installing the remaining parts

02:23  17  onto that assembly.  Defendant engaged in this conduct

02:23  18  willfully, that is, knowing that his conduct was unlawful.

02:23  19  Defendant carried on this business at a warehouse located on

02:24  20  Beach Boulevard in the city of La Habra, in Orange County,

02:24  21  within the Central District of California.  Defendant

02:24  22  charged his customers about $1,000 per firearm depending on

02:24  23  the precise parts and accessories chosen by the customer.

02:24  24  Defendant did not have a license to manufacture firearms.

02:24  25          THE COURT:  Sir, do you understand what the

02:24    1    Assistant United States Attorney has said?

02:24    2               THE DEFENDANT:  Yes.

02:24    3               THE COURT:  Is everything the Assistant United

02:24    4    States Attorney said about you and your conduct and intent

02:24    5    true and correct?

02:24    6               THE DEFENDANT:  Yes.

02:24    7               THE COURT:  Sir, are you pleading guilty because

02:24    8    you in fact did the acts charged in Count One of the

02:24    9    Indictment?

02:24   10               THE DEFENDANT:  Yes.

02:24   11               THE COURT:  Tell me in your own words what you

02:24   12    did.

02:24   13               THE DEFENDANT:  I manufactured AR-15 style

02:24   14    firearms without a proper license.

02:24   15               THE COURT:  Did you know that you were

02:24   16    manufacturing what would qualify as a firearm under the

02:25   17    statutes?

02:25   18               MR. NICOLAYSEN:  Your Honor, we agree with the

02:25   19    factual basis.  He would simply reiterate what is in the

02:25   20    factual basis.

02:25   21               THE COURT:  I want to hear it from his own words,

02:25   22    please.

02:25   23               Did you understand that what you were doing was

02:25   24    the manufacture of a statutorily defined firearm?

02:25   25               THE DEFENDANT:  Excuse me one second, Your Honor.

02:25    1          THE COURT:  Sure.

02:25    2          (Counsel and defendant conferring)

02:25    3          MR. NICOLAYSEN:  Your Honor, I don't know that we

02:25    4  can admit that we knew it was statutorily defined.  But we

02:25    5  agree exactly as it says in the factual basis that he acted

02:25    6  willfully.  He knew his acts were unlawful, that he was

02:25    7  manufacturing AR-15 style rifles without a license which was

02:25    8  required.

02:25    9          THE COURT:  Sir, did you understand that your

02:25   10  conduct was unlawful unless you had a license?

02:25   11          THE DEFENDANT:  Yes, Your Honor.

02:25   12          THE COURT:  And when you manufactured these

02:26   13  weapons, did you know you didn't have a license?

02:26   14          THE DEFENDANT:  Yes.

02:26   15          THE COURT:  Sir, are you pleading guilty because

02:26   16  you are in fact guilty?

02:26   17          THE DEFENDANT:  Yes.

02:26   18          THE COURT:  Mr. Nicolaysen, have you reviewed the

02:26   19  facts of the case?

02:26   20          MR. NICOLAYSEN:  I have.

02:26   21          THE COURT:  And all the discovery that may have

02:26   22  been provided to you by the government?

02:26   23          MR. NICOLAYSEN:  Yes.

02:26   24          THE COURT:  And have you reviewed the facts of the

02:26   25  case and the discovery with your client?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

02:26   1          MR. NICOLAYSEN:  I have.

02:26   2          THE COURT:  Have you advised the defendant

02:26   3  concerning the legality or admissibility of any statements

02:26   4  or confessions or other evidence the government may have

02:26   5  against him?

02:26   6          MR. NICOLAYSEN:  I have.

02:26   7          THE COURT:  Is the defendant pleading guilty

02:26   8  because of any illegally obtained evidence in the possession

02:26   9  of the government that you are aware of?

02:26  10          MR. NICOLAYSEN:  Not that I am aware of.

02:26  11          THE CLERK:  Did you explore with your client any

02:26  12  possible defense he may have to the charge?

02:26  13          MR. NICOLAYSEN:  We did.

02:26  14          THE COURT:  Do you believe there is a factual

02:26  15  basis for the plea which the defendant is offering to enter?

02:26  16          MR. NICOLAYSEN:  Yes.

02:26  17          THE COURT:  Have you conferred with and advised

02:26  18  your client regarding this guilty plea?

02:26  19          MR. NICOLAYSEN:  I have.

02:26  20          THE COURT:  Do you believe that the plea is being

02:27  21  made freely and voluntarily with a full understanding of the

02:27  22  charges and the consequences of the plea?

02:27  23          MR. NICOLAYSEN:  Yes.

02:27  24          THE COURT:  The written plea agreement indicates

02:27  25  that you and Mr. Roh signed it on May 3, 2019.  Did he sign

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

02:27  1    it in your presence?

02:27  2             THE DEFENDANT:  He did not.  We coordinated by

02:27  3    e-maol.

02:27  4             THE COURT:  Did he send you back a signature?

02:27  5             MR. NICOLAYSEN:  He did.

02:27  6             THE COURT:  Prior to his sending you back a

02:27  7    signature, did you have a substantive discussion with him

02:27  8    about the content of the plea agreement?

02:27  9             MR. NICOLAYSEN:  We did.

02:27  10            THE COURT:  Does the plea agreement represent the

02:27  11   entire disposition of this case insofar as you, your client,

02:27  12   and the U.S. Attorney's Office is concerned?

02:27  13            MR. NICOLAYSEN:  The plea agreement and the

02:27  14   Diversion Agreement attached thereto, yes, Your Honor.

02:27  15            THE COURT:  Okay.  Is the plea agreement part of a

02:27  16   joint agreement with any other defendant or potential

02:27  17   defendant?

02:28  18            MR. NICOLAYSEN:  No, Your Honor, not that I am

02:28  19   aware of.

02:28  20            THE COURT:  Have there been any promises,

02:28  21   representations, or guarantees made either to you or your

02:28  22   client other than what's contained in the written plea

02:28  23   agreement?

02:28  24            MR. NICOLAYSEN:  No.

02:28  25            THE COURT:  In your judgment, is it in your

| | | |
|---|---|---|
| 02:28 | 1 | client's best interests and the interests of justice for me |
| 02:28 | 2 | to accept this plea? |
| 02:28 | 3 | MR. NICOLAYSEN:  It is and, again, saying that in |
| 02:28 | 4 | conjunction with the Diversion Agreement. |
| 02:28 | 5 | THE COURT:  Do you know of any reason why the |
| 02:28 | 6 | Court should not accept the plea? |
| 02:28 | 7 | MR. NICOLAYSEN:  No. |
| 02:28 | 8 | THE COURT:  Do you join in the waiver of jury |
| 02:28 | 9 | trial and concur in the plea? |
| 02:28 | 10 | MR. NICOLAYSEN:  I do. |
| 02:28 | 11 | THE COURT:  Mr. Nelson, other than what is |
| 02:28 | 12 | expressly contained in the written agreement, has the |
| 02:28 | 13 | government made any other representations, promises, or |
| 02:28 | 14 | guarantees either to the defendant or his counsel? |
| 02:28 | 15 | MR. NELSON:  No. |
| 02:28 | 16 | THE COURT:  Is the intended plea agreement part of |
| 02:28 | 17 | a joint agreement with any other defendant or potential |
| 02:28 | 18 | defendant? |
| 02:28 | 19 | MR. NELSON:  No. |
| 02:28 | 20 | THE COURT:  Mr. Roh, are you satisfied with the |
| 02:28 | 21 | representation that Mr. Nicolaysen has provided to you? |
| 02:29 | 22 | THE DEFENDANT:  Yes. |
| 02:29 | 23 | THE COURT:  Do you feel that he has fully |
| 02:29 | 24 | considered any defense you may have to the charge? |
| 02:29 | 25 | THE DEFENDANT:  Yes. |

02:29   1          THE COURT:  Do you believe that he has fully
02:29   2   advised you concerning this matter?
02:29   3          THE DEFENDANT:  Yes.
02:29   4          THE COURT:  Do you feel that you have had enough
02:29   5   time to discuss the case with him?
02:29   6          THE DEFENDANT:  Yes.
02:29   7          THE COURT:  Would you like any additional time
02:29   8   now?
02:29   9          THE DEFENDANT:  No.
02:29  10          THE COURT:  Did Mr. Nicolaysen or anyone tell you
02:29  11   how to answer any of the questions I have asked you today?
02:29  12          THE DEFENDANT:  No.
02:29  13          THE CLERK:  Do you feel that you understand
02:29  14   everything going on here today and the consequences to you
02:29  15   and that you are competent to make the decision to plead
02:29  16   guilty?
02:29  17          THE DEFENDANT:  Yes.
02:29  18          THE COURT:  Do you know of any reason why the
02:29  19   Court should not accept your plea?
02:29  20          THE DEFENDANT:  No.
02:29  21          THE COURT:  Do you understand then that all that
02:29  22   is left in this case in the event that I accept your plea of
02:29  23   guilty is the imposition of sentence which may include
02:29  24   imprisonment under the federal guidelines?
02:29  25          THE DEFENDANT:  Yes.

02:29  1          THE COURT:  Having in mind all we have discussed

02:29  2   regarding your plea of guilty, the rights you will be giving

02:29  3   up, and the maximum sentence you might receive, is it still

02:29  4   your desire to plead guilty?

02:29  5          THE DEFENDANT:  Yes.

02:30  6          THE COURT:  We have come to the ultimate question

02:30  7   as to how you would plead.  I have a concern about this

02:30  8   Diversion Agreement.  I'm going to delay actually taking the

02:30  9   plea for seven days to allow the parties to put in a

02:30 10   memorandum of no more than seven pages advising me on what

02:30 11   discretion, if any, the Court has to accept the Diversion

02:30 12   Agreement.  The Diversion Agreement as I read the documents

02:30 13   is a separate side agreement apart from the plea agreement.

02:30 14          MR. NELSON:  It is incorporated into the plea

02:30 15   agreement, and the two work hand in hand.  So long as the

02:30 16   defendant complies with the terms of the two agreements,

02:30 17   that works hand in hand, at the end of the period of

02:30 18   diversion, the parties will jointly move to allow the

02:30 19   defendant to withdraw his plea and dismiss --

02:31 20          MR. NICOLAYSEN:  For that reason, I would ask the

02:31 21   Court not to set a sentencing date because --

02:31 22          THE COURT:  I'm not, and I'm not going to take his

02:31 23   plea either today.

02:31 24          MR. NICOLAYSEN:  And I was going to ask the Court

02:31 25   not to accept the plea if there are any concerns about the

```
02:31   1   Diversion Agreement itself because I join the government
02:31   2   that the two are incorporated into one document.
02:31   3           THE COURT:  I haven't answered in my own mind
02:31   4   assuming the Court must sign off on the Diversion Agreement
02:31   5   whether I would do that.  I have deep concern about the
02:31   6   conduct here, particularly the type of weapon that was
02:31   7   manufactured.  In virtually all the mass shootings in the
02:31   8   past couple years around the United States, an AR-15 or
02:31   9   something very similar to it has been involved.
02:31  10           The conduct here is not technical.  It has serious
02:31  11   ramifications.  For that reason, I have not come to a
02:32  12   conclusion, assuming I have the discretion to sign off on
02:32  13   this type of Diversion Agreement as opposed to a CASA
02:32  14   Agreement.
02:32  15           If you want more than seven days, that's fine.
02:32  16           MR. NICOLAYSEN:  Your Honor, CASA is an entirely
02:32  17   different --
02:32  18           THE COURT:  That's what Mr. Nelson is telling me,
02:32  19   but I would like to see what the parameters of my discretion
02:32  20   are.
02:32  21           MR. NICOLAYSEN:  Would it be helpful to have a
02:32  22   representative of Pretrial who is actively involved in the
02:32  23   Diversion Program?
02:32  24           THE COURT:  I don't think so.  What my discretion
02:32  25   is is a question of law.
```

02:32   1          MR. NICOLAYSEN:  I can't cite a statute off the

02:32   2   top of my head that addresses it.  I think it's a matter of

02:32   3   policy within this district.  I believe that's correct.

02:32   4   That's why I'm thinking Pretrial might actually be the best

02:32   5   resource for you.

02:32   6          THE COURT:  Well, draw on whatever resources you

02:32   7   want and if you want to invite Pretrial to come back.  But I

02:32   8   will take a look at the question myself, and I would like

02:32   9   you to independently look at it.  I'm not saying that I have

02:32  10   made my mind up one way or another assuming that I have

02:33  11   discretion whether I would or would not sign off on a

02:33  12   Brooklyn type agreement.

02:33  13          MR. NICOLAYSEN:  So as we stand now, shall we

02:33  14   recess today's proceeding without concluding it, and the

02:33  15   plea is not entered?

02:33  16          THE COURT:  Yes, correct, right up to asking that

02:33  17   question.  I have concluded that I will not ask that

02:33  18   question today.

02:33  19          So is it convenient to you -- I am going to be in

02:33  20   trial next week, so --

02:33  21          MR. NICOLAYSEN:  Because of my schedule, I will

02:33  22   need two weeks.  Is that acceptable to the Court?

02:33  23          THE COURT:  That's fine.

02:33  24          MR. NICOLAYSEN:  Does the Court want a joint

02:33  25   memorandum filed by both parties?

```
02:33    1              THE COURT:  I will let you discuss that if you
02:33    2    want put in a joint or individually, however you want to do
02:33    3    it.
02:33    4              MR. NICOLAYSEN:  Would you like an answer to that
02:33    5    now or should we just confer?
02:33    6              THE COURT:  Well, whatever you want to do.
02:33    7              MR. NICOLAYSEN:  Could we have a deadline of the
02:33    8    17th?
02:33    9              MR. NELSON:  The 17th is fine, and I think a joint
02:34   10    position is appropriate.
02:34   11              Would Your Honor like that filed perhaps by the
02:34   12    10th or another date before we show up on the 17th?
02:34   13              THE COURT:  I would need the 17th for the filing.
02:34   14              MR. NICOLAYSEN:  Does the Court wish to have the
02:34   15    parties back in person for a follow-up hearing?
02:34   16              THE COURT:  Yes, indeed.  There is only one person
02:34   17    who can plead.
02:34   18              MR. NICOLAYSEN:  Can the Court have us the same
02:34   19    week of the 17th?  Would that work?  I'm going to be out of
02:34   20    town the following week starting on the 22nd.
02:34   21              THE COURT:  Any day that week is fine.
02:34   22              MR. NICOLAYSEN:  If we file it on Monday, the
02:34   23    17th, would the Court entertain the parties the following
02:34   24    day, the 18th?
02:34   25              THE COURT:  Well, more than one day.
```

02:34 1          MR. NICOLAYSEN:  Thursday, the 20th?

02:35 2          THE COURT:  What time?

02:35 3          MR. NELSON:  The afternoon, Your Honor.

02:35 4          THE COURT:  Is that good for you, Mr. Nicolaysen?

02:35 5          MR. NICOLAYSEN:  Thursday, the 20th, at 2:00?

02:35 6          THE COURT:  Yes.

02:35 7          MR. NICOLAYSEN:  That's fine.  Thank you.

02:35 8          THE COURT:  The matter will go over to that date

02:35 9    then.  Thank you.

02:35 10          (Whereupon, the proceedings were concluded.)

02:35 11                          *    *    *

02:35 12

02:35 13

02:35 14

02:35 15

02:35 16

02:35 17

02:35 18

02:35 19

02:35 20

02:35 21

02:35 22

02:35 23

02:35 24

02:35 25

CERTIFICATE

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date:  June 6, 2019

/s/   Sharon A. Seffens  6/6/19
_____
SHARON A. SEFFENS, U.S. COURT REPORTER

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER